RICHARD A. SPARKS *vs.* MICROWAVE ASSOCIATES, INC.

Middlesex.    May 3, 1971. — June 9, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, QUIRICO, & BRAUCHER, JJ.

*Contract*, Stock option, Contract of employment.

Under a company's stock option purchase plan providing that the period for exercise of an option by an employee should begin one year and end five years "from the date the option is granted," and that an option could be exercised at any time "during the option period applicable to such option," an employee whose employment was terminated less than a year after he was granted an option and who thereafter was merely subject to call as a consultant at the sole discretion of the company was not entitled to exercise the option one year after it was granted.

CONTRACT. Writ in the Superior Court dated September 26, 1967.

The action was tried before *Chmielinski, J.*

*Laurence M. Johnson* for the defendant.

*Richard J. Bennett* for the plaintiff.

CUTTER, J.    Sparks seeks to recover damages for the alleged breach of a stock option issued to him by the de-

fendant (Microwave) under its "Officer and Key Employee Qualified Stock Option Plan" (the plan). There was a verdict for Sparks. Microwave's bill of exceptions brings before us exceptions (a) to the judge's denial of a directed verdict; (b) to his charge; and (c) to his refusal to give certain requested instructions.[1] The testimony is stated in its aspect most favorable to Sparks.

Sparks, an electrical engineer, had been employed by a firm specializing in the development of yttrium iron garnet devices, known as YIG devices. He was hired by Microwave on June 6, 1966, as product manager of its YIG product line. At this time, Microwave's personnel director undertook to recommend to its board of directors that he be granted a stock option. On June 30, 1966, he was given a stock option for 1,000 shares under the plan. On April 6, 1967, Sparks was notified by his supervisor that Microwave had decided to discontinue the YIG product line and that his employment with Microwave was to be terminated. The next day, April 7, he signed two termination statements and removed his papers from his office. That was the last day he regularly reported to work at Microwave. He received accrued vacation pay and severance pay through May, 1967.

Sparks discussed with his supervisor "the question of his serving as a consultant while . . . orders in . . . [the YIG] product area were still" pending and undelivered. There was a total of $60,000 of such contracts, under which the last deliveries would probably take place near the end of August, 1967. Sparks also asked "about the possibility of remaining available as a consultant until he would have been able to exercise his stock option." The supervisor said "he would have to let Sparks know about it." Later that day, the supervisor told Sparks that "Microwave was agreeable to Sparks'[s] remaining available as a consultant during completion of the YIG orders." Sparks "could be con-

---

[1] The parties agreed "at the beginning of the trial" (a) that the "sole question before the jury was whether Sparks was an employee of Microwave on June 30, 1967," when he attempted to exercise the option; and (b) that, if Sparks was an employee on June 30, 1967, he was to recover $3,000; but otherwise there should be a finding for Microwave.

sulted if any engineering problems arose on the YIG jobs."[2]

In late May, Sparks was called by one of Microwave's mechanical designers who "understood that Sparks had agreed to render consultative assistance with respect to . . . delivery of the YIG orders. Sparks arranged to be available on Saturday, June 3, 1967 and went . . . on that day to help solve some problems that had developed.[3] Sparks was anxious to retain affiliations with Microwave that would ensure that he could exercise the option and it was for that reason that he submitted his check on June 30 for the 200 shares which he believed he was entitled to purchase under the option at that time. Until he received . . . [a] letter of July 7, 1967 from Microwave's counsel, he had not had any indication that he would not be allowed to purchase stock under the option. Sparks went to work for Raytheon [a competitor of Microwave] some time in May or June" and "was working for Raytheon" on June 3, 1967.

Sparks attempted to exercise his stock option on June 30, 1967. On May 25, 1967, he wrote a letter to Microwave's personnel director (see fn. 2) indicating a belief that the "official termination date" of his "employment period" with Microwave was May 31, 1967. Sparks's answers to certain interrogatories (introduced in evidence) stated that the last date on which he performed any services for Microwave was June 3, 1967, and that his employment by Microwave then ceased.

Microwave contends that Sparks was not entitled to exercise the option because the attempt to do so on June 30, 1967, followed termination of Sparks's employment, which occurred before a full year had elapsed (see the plan, § 8,

---

[2] Sparks's supervisor and an officer of Microwave each testified that Sparks, at or after the time his employment was terminated, never spoke about the option. One regarded Sparks's employment as terminated on April 7; the other gave him a letter of recommendation stating that Sparks was on the Microwave "payroll until May 30, 1967," a date which Sparks by letter claimed should be May 31.

[3] On that day he signed in on the visitor's log and stayed two hours and twenty minutes. He talked with some Microwave employees on the telephone after June 3, about the YIG orders. He was not paid for his work on June 3, and never made any claim for pay.

and the one year minimum provision of § 7). Relevant provisions of the plan are set out in the margin.[4]

1. The parties in effect have stipulated that the option could not be exercised by Sparks unless he was an employee on June 30, 1967. That was the first day of the option period which began (under § 7) "one year . . . from the date the option is granted." Under § 8 of the plan, the option could be exercised only during the option period. If the cessation of his employment occurred before June 30, 1967, Sparks could not exercise the option during any thirty-day period given by § 7 (c) of the plan because the cessation was not "during . . . the period of years applicable to . . . [his] option," as required by § 7 (c).

The interpretation of the plan, a written contract, if not ambiguous, is a question of law for the court. See *Daley* v. *J. F. White Contr. Co.* 347 Mass. 285, 288. The plan, we think, is properly to be interpreted as not including within the term "employee" a person who is merely a casual consultant and then only at the discretion of Microwave. The purpose of the plan and its description of who may be "participants" indicates that a more substantial relationship with Microwave was contemplated. Of course, one

---

[4] The plan provides in part (emphasis supplied): *Section 1. "Purpose.* The purpose of this Plan is to further the growth and development of the Company by granting to *certain officers, department heads and* other key employees, as an incentive and to encourage stock ownership, options to purchase shares of Stock of the Company and thereby obtain a proprietary interest in the enterprise and a more direct stake in its continuing welfare." *Section 7. "Option Period. The period for exercising an option shall be the period beginning one year* and ending five years *from the date the option is granted,* except that . . . (c) *If a participant ceases to be an employee* of the Company for any cause other than retirement or death *during,* but more than thirty (30) days before the expiration of, *the period of years applicable to an option* held by him, such option shall be exercisable by him only during the thirty days following the cessation of his employment, and shall not be exercisable thereafter." *Section 8. "Exercise of Option.* An option may be exercised at any time and from time to time *during the option period applicable to such option* except that an option may be exercised: (i) during the second year from the date it was granted only to the extent of twenty per cent of the number of shares covered by the option . . . . If one of the events referred to in subparagraphs (a), (b), or (c) of Section 7 occurs, the option shall be exercisable during . . . the thirty days following cessation of employment . . . only as to the number of shares, if any, as to which it was exercisable, immediately prior to the . . . cessation of employment, under this [s]ection."

qualified to be a "participant" in the plan when an option was issued to him might cease to be so qualified during the period for exercise of the option. We assume that he would remain an "employee" if he continued to be employed by Microwave on a regular (and not merely a casual) basis. If, however, he became merely a consultant subject to call at Microwave's sole discretion, we think that thereafter he would cease to be an employee within the meaning of the plan.

A verdict should have been directed for Microwave.

2. In view of our decision on the motion for a directed verdict, it is unnecessary to discuss other exceptions.

*Exceptions sustained.*
*Judgment for the defendant.*