**Suneil K. GURWARA, Plaintiff,**

v.

**LYPHOMED, INC., Defendant.**

**No. 90 C 1400.**

United States District Court,
N.D. Illinois, E.D.

May 11, 1990.

On Motion to Reconsider
June 12, 1990.

Mark P. Cohen, Lance M. Lis, Frederic A. Mendelsohn, Schoenberg, Fisher & Newman, Ltd., Chicago, Ill., for plaintiff.

Peter B. Newton, Robert J. Mandel, K. Clark Schirle, Neal Gerberg & Eisenberg, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff Suneil Gurwara ("Gurwara") brought an action under federal securities laws against his former employer, LyphoMed, Inc. ("LyphoMed"). Gurwara also filed pendent state law claims for fraud and breach of contract against LyphoMed. LyphoMed moves to dismiss the federal claim pursuant to Fed.R.Civ.P. 12(b)(6). Assuming the federal claim is dismissed, LyphoMed moves to dismiss the remaining state claims for lack of subject matter jurisdiction.

## I. Background

In deciding a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and inferences reasonably drawn from them. *Gomez v. Illinois Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal is proper if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested. *Illinois Health Care Assoc. v. Illinois Dep't of Public Health*, 879 F.2d 286, 288 (7th Cir.1989) citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Thus, the facts of this dispute are recited as alleged in Gurwara's complaint.

Gurwara was employed by defendant LyphoMed in May 1985. At that time, Gurwara and LyphoMed entered an "Incentive and Non–Qualified Stock Option Agreement" that permitted Gurwara to purchase stock of LyphoMed ("the stock agreement"). The stock agreement gave Gurwara the option to purchase shares of LyphoMed stock at $19.13 per share. The stock agreement permitted Gurwara to purchase 6250 shares each year for a period of four years between May 6, 1986 and May 5, 1990. In the event that Gurwara was terminated, the stock agreement provided that within three months, Gurwara could purchase the full number of shares that he was entitled to purchase on the date of his termination. The stock agreement provided that if Gurwara became permanently disabled, within twelve months he could exercise his option to purchase the full number of shares he was entitled to purchase on the date of his disability.

Gurwara exercised his option to purchase LyphoMed stock in each of the first two years covered under the stock agreement. In order for his third year option to vest, he was required to be employed and not permanently disabled as of May 6, 1988. Gurwara underwent surgery for a brain tumor in December 1986 and again in January 1987. From December 1986 to May 1987, Gurwara was on short term disability. In May 1987, he returned to work and received a full salary as a full-time employee until March 31, 1988.

In the spring of 1988, Gurwara requested assistance to perform his job duties. LyphoMed allegedly offered Gurwara a less demanding position as director of pharmaceutical information in March 1988. Subsequently, Edward Khamis ("Khamis"), vice president of human resources of LyphoMed, proposed to Gurwara that Gurwara spend six months on short-term disability. Khamis suggested that after six months, Gurwara could go on long-term disability.

In the spring of 1988, LyphoMed was involved in a class action lawsuit. Khamis told Gurwara that if Gurwara elected short-term disability effective April 1, 1988, he would still be required to provide LyphoMed with his full cooperation in the defense of the lawsuit. In addition, Khamis told Gurwara that if Gurwara went on short-term disability, he would receive partial salary from LyphoMed and use of a company car through August 31, 1988. On April 11, 1988, LyphoMed sent Gurwara a letter repeating the offer.

On April 1, 1988, without informing Gurwara, LyphoMed terminated Gurwara or considered him permanently disabled. Consequently, Gurwara's third-year stock option did not vest. LyphoMed did not conduct an exit interview, obtain Gurwara's identification card or explain to Gurwara his employee benefits rights. LyphoMed customarily performed these tasks when terminating an employee. When Gurwara attempted to exercise his third option to purchase LyphoMed stock, LyphoMed informed him that he was ineligible to exercise the option because he was terminated as an employee prior to May 6, 1988.

## II. Gurwara's Claim Under Section 10(b) and Rule 10b–5

In Count I of his complaint, Gurwara claims that LyphoMed violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 CFR § 240.10b–5 (collectively "section

10(b)").[1] Gurwara recounts that LyphoMed terminated him or placed him on permanent disability on April 1, 1988. He alleges that Lyphomed failed to inform him (1) that when he accepted short term disability, LyphoMed would consider him a terminated or permanently disabled employee; and (2) that the effect of Gurwara's action would be that the third option period would not vest. Gurwara alleges that LyphoMed misrepresented that Gurwara would continue as an employee of the company in order to secure his cooperation in the pending lawsuit. He maintains that LyphoMed sought to punish him for the lawsuits. Gurwara asserts that if not for LyphoMed's misrepresentations, he would not have gone on short-term disability prior to May 6, 1990, and he would have exercised his option to purchase LyphoMed stock.

■ LyphoMed moves to dismiss Count I pursuant to Rule 12(b)(6) for failure to state a claim. In order to state a claim under Section 10(b), the plaintiff must establish that LyphoMed:

> (1) made an untrue statement of material fact or omitted a material fact that rendered the statements made misleading, (2) in connection with a securities transaction, (3) with the intent to mislead, and (4) which caused the plaintiff's loss.

*Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir.1989). A material omission is only actionable if the defendant had a duty to disclose the omitted information. *LHLC*

*Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 932 (7th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988).

## A. Causation

■ LyphoMed argues that the misrepresentations did not cause Gurwara's loss. LyphoMed argues that Gurwara made no investment decision; therefore, the misrepresentations did not cause the loss. To prove causation, a plaintiff must establish that, "but for the defendant's wrongdoing, the plaintiff would not have incurred the harm of which he complains." *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 685 (7th Cir.1990). Gurwara asserts that he would not have accepted short-term disability status had he been notified that it would preempt his stock option. He claims he would have taken the less strenuous job that LyphoMed offered in the spring of 1988. Viewing reasonable inferences in Gurwara's favor, LyphoMed would not have terminated Gurwara without his consent. LyphoMed required Gurwara's cooperation to defend against the class action lawsuit that was pending in the spring of 1988. To the extent that Gurwara had the discretion and desire to continue to work, the misrepresentations caused him to lose his job and his stock options. Accepting his allegations as true, Gurwara would have kept his job until his stock option vested. He accepted short-term disability with the understanding that it permitted him to exercise his stock options. Thus,

---

1. Section 10(b) provides in relevant part:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 Rule 10b–5, promulgated under the authority of section 10(b), provides:
 Employment of manipulative or deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

the misrepresentations caused the harm of which he complains.

### B. In Connection With A Securities Transaction

■ LyphoMed argues that the alleged misrepresentations were not made "in connection with a securities transaction." The company argues that Gurwara's contractual right to exercise his third option to purchase stock never came to fruition because he was terminated prior to May 6, 1988. Under Section 3(a)(13) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(13), "[t]he terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire." LyphoMed asserts that Gurwara had no contractual right to purchase the stock; consequently, Gurwara was not a purchaser under the federal securities laws, citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750–755, 95 S.Ct. 1917, 1932–1935, 44 L.Ed.2d 539 (1975). In *Blue Chip Stamps*, the Supreme Court held that only an actual seller or purchaser of securities may bring an action under section 10(b). Gurwara argues that he had a contractual right to purchase stock, and that right was the subject of the alleged fraud. Accepting the tenuous proposition that Gurwara was a purchaser for the purposes of section 10(b), he still must establish that the misrepresentations were made in connection with a securities transaction. *Schlifke*, 866 F.2d at 943.

The fourth circuit in *Hunt v. Robinson*, 852 F.2d 786 (4th Cir.1988), interpreted the "in connection with" requirement of section 10(b) in light of *Blue Chip Stamps* and other Supreme Court decisions that limited the scope of the implied right of action under section 10(b). In *Robinson*, the plaintiff was promised shares of stock if he agreed to work for the defendant. The defendant failed to issue stock to the plaintiff, who brought suit under section 10(b). The court reasoned:

> The fundamental purpose of the Securities Exchange Act of 1934 is to implement a 'philosophy of full disclosure,' *Sante Fe Indus. v. Green*, 430 U.S. 462, 477–478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d

480 (1977) by providing participants in stock transactions with the information they need to make their investment decisions. *O'Brien v. Continental Illinois Nat'l Bank & Trust*, 593 F.2d 54, 60 (7th Cir.1979). That goal is not furthered by bringing within the ambit of § 10(b) claims amounting to breach of contract or common law fraud which have long been the staples of state law.

*Robinson*, 852 F.2d at 787–788. Accordingly, the court dismissed the plaintiff's section 10(b) claim. See also, *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2nd Cir.1984) (Friendly, J.), *cert. denied* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

The misrepresentations that Gurwara relies upon did not arise in connection with a securities transaction. Gurwara essentially argues that he was deprived of compensation under his employment agreement with LyphoMed. The nature of the compensation that Gurwara sacrificed by accepting his termination is immaterial. Rather than a stock option, the lost compensation could have been retirement pay, an annuity or some other benefit that vested only if he remained employed. Gurwara alleges that fraud was committed in terminating his employment.

It is uncontested that Gurwara had a clear contractual right to purchase LyphoMed stock as long as he was not terminated or totally and permanently disabled as of May 6, 1988. LyphoMed's alleged misrepresentations caused Gurwara to forfeit that right by duping him into accepting termination. Thus, the misrepresentations affected his decision to accept short-term disability status rather than an alternative position. The alleged misrepresentations were made in connection with his employment decision, not in connection with a securities transaction. It would be senseless to extend section 10(b) to cover an employment dispute simply because a stock option turns on the resolution. See, *Ketchum v. Green*, 557 F.2d 1022, 1027–1028 (3rd Cir.), *cert. denied* 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977) (purported-

ly deceptive practices occurred in a struggle for control of the corporation).

■ Another way of describing Gurwara's failure to state a claim under section 10(b) is that the misrepresentations were not material. In *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1232–34 (7th Cir. 1988), the seventh circuit discussed the materiality requirement of Section 10(b):

> An omission or misstatement is material if a substantial likelihood exists that a reasonable investor would find the omitted or misstated fact significant in deciding whether to buy or sell a security, and on what terms to buy or sell. [*Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)].

*Id.* at 1233. The misrepresentations that LyphoMed made were material to Gurwara's decision to accept short-term disability. They were not material to his decision to buy or sell LyphoMed stock. Consequently, the misrepresentations do not satisfy the materiality requirement of a claim under section 10(b).

Gurwara attempts to analogize the seventh circuit holding in *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429 (7th Cir.1987). In that case, the plaintiff, James Jordan, was an employee of Duff & Phelps, Inc., a closely held corporation. He held shares of stock in Duff & Phelps. He decided to resign, and pursuant to a stock restriction agreement, he was obligated to sell the stock back to the corporation on his last day of work. Duff & Phelps permitted Jordan to determine how long he would like to continue to work in order to maximize the value of his stock. Jordan sold the stock to the corporation in December 1983. Shortly thereafter, the corporation announced that it would be acquired by another corporation at a substantial gain to the remaining shareholders. The seventh circuit held that as a close corporation, Duff & Phelps was obligated to disclose all material information to its shareholders

upon purchasing its own stock. Consequently, Jordan was able to state a claim under section 10(b) against the corporation for omitting to disclose material information in connection with the sale of stock.

In *Jordan*, unlike the instant case, the investor took into account the value of the shares of stock when he decided to resign. The failure to disclose that the company was merging was material to the employee's decision to sell the stock at that time. In contrast, Gurwara does not allege any material nondisclosure or misstatement concerning the value of LyphoMed stock. LyphoMed's alleged misrepresentations affected Gurwara's employment status. As such, they are not a sufficient basis for an action under section 10(b).

### III. Conclusion

Count I of Gurwara's complaint alleging a violation of section 10(b) is dismissed. Gurwara does not contest that upon dismissing Count I, the court lacks subject matter jurisdiction over the complaint. Consequently, Counts II and III are dismissed without prejudice.

## MEMORANDUM OPINION AND ORDER

### ON MOTION TO RECONSIDER

On May 11, 1990, the court dismissed plaintiff Suneil K. Gurwara's complaint on the ground that Gurwara failed to state a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 CFR § 240.10b–5 (collectively "section 10(b)"). Gurwara lacked a jurisdictional basis for his remaining pendent state law claims. Gurwara moves the court to reconsider the decision to dismiss the complaint or, in the alternative, to grant him leave to file an amended complaint.[1] The facts as alleged in the complaint are discussed in the May 11, 1990 memorandum opinion and order. Rather than repeating them, the discussion in the

---

1. Gurwara files his motion to reconsider to correct a manifest error of law. *See, Publishers Resource v. Walker–Davis Publications,* 762 F.2d 557, 561 (7th Cir.1985). Lyphomed asserts Gurwara's motion vexatiously complicates the pro-

ceedings, and Lyphomed requests the court to sanction Gurwara. Gurwara's motion is reasonably based in law and fact; consequently, Lyphomed's request for sanctions is denied.

May 11 memorandum is incorporated in this opinion.

Gurwara's proposed amended complaint adds a single paragraph to the original complaint. In the new paragraph, Gurwara alleges that he chose to accept short term disability because he was deceived into believing that it preserved his right to exercise his third option. He states that he would not have accepted short term liability had he known he would forfeit his option.

## I. Gurwara's Claim Under Section 10(b)

As stated in the May 11 memorandum, in order to state a claim under section 10(b), Gurwara must establish that LyphoMed

> (1) made an untrue statement of material fact or omitted a material fact that rendered the statements made misleading, (2) in connection with a securities transaction, (3) with the intent to mislead, and (4) which caused the plaintiff's loss.

*Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir.1989). The court dismissed Gurwara's section 10(b) claim, ruling (1) that the alleged misrepresentations were not made in connection with a securities transaction, and (2) that the misrepresentations were not material.

### A. "In Connection With A Securities Transaction"

Gurwara alleges that he was fraudulently induced to accept short-term disability status. Complaint ¶ 16. He alleges that Lyphomed convinced him to accept short-term disability so Lyphomed could obtain Gurwara's cooperation in the pending lawsuit while surreptitiously preventing Gurwara from exercising his third option. Complaint ¶¶ 18, 19. In Gurwara's motion to reconsider, he reiterates that the direct object of Lyphomed's deception was to prevent Gurwara from exercising his stock rights.

#### 1. The object of the fraud

■ Gurwara argues that the direct object of the fraud was to prevent Gurwara from exercising his stock option. In fact, as Gurwara states in his complaint and his proposed amended complaint, Lyphomed had two objects in mind when it allegedly deceived Gurwara. Lyphomed desired to secure Gurwara's cooperation in the pending lawsuit and to deprive him of the third option. Complaint ¶ 19. Gurwara's claim is similar to the plaintiff's claim in *Hunt v. Robinson*, 852 F.2d 786 (4th Cir.1988). As discussed in the May 11 memorandum, in *Robinson*, the plaintiff was induced to work for the defendant company by a fraudulent promise that he would receive stock as compensation. The plaintiff never received the promised stock. The appellate court dismissed the action, concluding that the defendant had not misrepresented the value of the stock. In *Robinson*, as in the current case, the employer fraudulently deprived the employee of compensation. However, as *Robinson* exemplifies, the fact that the intended compensation was a security does not bring the fraud within the realm of section 10(b).

The *Robinson* court distinguished *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555 (2d Cir.1985). In *Yoder*, the plaintiff was induced to enter an employment contract and transfer assets to the defendant corporation in exchange for the right to receive shares of stock. The corporation allegedly misrepresented the value of the stock. The second circuit concluded that the misrepresentation was made in connection with the purchase or sale of a security because the employee was relying upon the misrepresented value of the securities when she decided to accept employment and deliver assets to the corporation. *Id.* at 560.

Gurwara asserts that Lyphomed promised Gurwara an allegedly valuable stock option, but the misrepresentations rendered the option worthless. Gurwara concludes that the misrepresentations concerned the value of the stock option. Gurwara's specious logic does not alter the facts alleged in his complaint. In his complaint, Gurwara asserts that the option was valuable, and he sought to exercise the option. Complaint ¶¶ 21, 25. The facts alleged in the complaint indicate Lyphomed did not misrepresent the value of the option but misrep-

resented that Gurwara was entitled to it. Lyphomed's misrepresentations were in connection with Gurwara's employment decision to accept short-term disability. The result of Lyphomed's misrepresentations was, according to the complaint, that Gurwara did not receive promised compensation. As the *Robinson* court observed, the goals of section 10(b) are not furthered by extending it to cover claims amounting to breach of contract or common law fraud. *Id.* at 787–788. Gurwara's claims are not cognizable under section 10(b).

### B. Materiality

■ In the May 11 memorandum, the court concluded that Lyphomed's misrepresentations were not material to an investment decision. The court cited *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1232–34 (7th Cir.1988), a seventh circuit decision defining the materiality requirement of Section 10(b) as follows:

> An omission or misstatement is material if a substantial likelihood exists that a reasonable investor would find the omitted or misstated fact significant in deciding whether to buy or sell a security, and on what terms to buy or sell. *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

The court held Lyphomed's omissions and misstatements were not material to a decision whether to buy or sell a security or on the terms to buy or sell.

In his motion to reconsider, Gurwara relies heavily on *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988) and *Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1574 (11th Cir. 1990). *Jordan* was discussed and distinguished in the May 11 memorandum. *Smith* is a virtually identical case. In *Smith*, a Duff & Phelps employee retired and, pursuant to an agreement with the company, he was obligated to sell all his Duff & Phelps shares back to the company at book value. Shortly after he retired, Duff & Phelps merged with another corporation, and the shareholders received a large premium on their shareholdings.

The retired employee sued Duff & Phelps for failing to disclose at the time of his retirement that the value of Duff & Phelps stock would soon dramatically escalate as a result of a merger. *Smith* and *Jordan* involve the same company, the same merger and the same stock purchase agreement. The plaintiffs in both *Duff & Phelps* cases chose their date of departure based upon the anticipated book value of the stock. Upon departure, the plaintiffs sold their stock to the company. In each case, the court found that Duff & Phelps had a duty to disclose the pending increased value of the stock. The company's nondisclosure was clearly material to the plaintiffs' decisions to sell their stock.

Gurwara never made a decision to buy or sell stock. In his proposed amended complaint, Gurwara alleges he accepted short term disability in order to secure his stock option. He alleges that the option never vested because Lyphomed terminated his employment or placed him on permanent disability. Complaint ¶ 18. Since he never acquired a third option, he never made an investment decision. Lyphomed's alleged misrepresentations affected his decision to accept short term disability. Lyphomed's alleged misrepresentations in effect preempted any investment decision before it could occur.

Gurwara's proposed amendment to the complaint only reiterates that Gurwara was deceived into accepting short term disability and would have accepted the alternative full time position in order to preserve his third stock option. In the proposed amended complaint, he claims that the decision to accept short term disability is an investment decision. A conclusory allegation that Gurwara made an investment decision is not sufficient to state a claim under section 10(b). Lyphomed's alleged misrepresentations were not material to an investment decision. The misrepresentations did not concern the value of the stock option as in the *Duff & Phelps* cases. In addition, Gurwara never received his third option; thus, no investment decision occurred.

*C. The Purchase or Sale Requirement*

 In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750–55, 95 S.Ct. 1917, 1932–1935, 44 L.Ed.2d 539 (1975), the Supreme Court held that only an actual seller or purchaser of securities may bring an action under section 10(b). This court did not address the actual purchase or sale requirement in its May 11 memorandum. For purposes of the motion to reconsider, the court now concludes that even if Gurwara is correct in asserting that Lyphomed's misrepresentations were material and in connection with a securities transaction, the complaint must be dismissed because no actual purchase or sale of stock ever occurred. Lyphomed considered Gurwara terminated and permanently disabled. His third option never vested and he never actually bought or sold any security. *See Ray v. Karris,* 780 F.2d 636, 640 (7th Cir. 1985) (dismissing plaintiffs' section 10(b) claim where plaintiffs were fraudulently convinced not to purchase stock).

## II. Conclusion

Gurwara's motion to reconsider is denied. Gurwara's motion to amend the complaint is also denied. Lyphomed's motion for sanctions is denied.