Suneil K. **GURWARA**,
Plaintiff–Appellant,

v.

**LYPHOMED, INCORPORATED**,
Defendant–Appellee.

No. 90–2372.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1991.

Decided July 25, 1991.

Mark P. Cohen, Lance M. Lis, Frederic A. Mendelson, Schoenberg, Fisher & Newman, Chicago, Ill., for plaintiff-appellant.

Phil C. Neal, Peter B. Newton, Robert J. Mandel, K. Clark Schirle, Neal, Gerber & Eisenberg, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., and CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

The plaintiff in this case sought to bring an action under section 10(b) and Rule 10b–5 against his employer to remedy the company's wrongful refusal to sell him its stock as guaranteed by his employment benefits package. The district court dismissed the action for failure to state a claim, 739 F.Supp. 1162, and we affirm.

LyphoMed, Inc., is a pharmaceutical company specializing in nutritional and therapeutic support of critical care patients. Suneil Gurwara moved to Chicago from another city, where he had worked for a LyphoMed subsidiary, in order to take an executive position with the parent company. Among his contract benefits from the company was a stock option agreement granting Gurwara the right to purchase 25,000 shares of LyphoMed stock at $19.13 per share. The agreement divided the bulk number of shares by four, giving Gurwara four consecutive year-long periods in which he might purchase 6,250 shares of stock respectively.

Gurwara experienced a setback however when in late 1986 and early 1987 he underwent surgery for a brain tumor. As a result the plaintiff was on short-term disability through May 1987. He returned to work after that time, but subsequently decided he needed help if he was to continue serving in the same capacity. In April of 1988 LyphoMed offered him two choices: change to a less taxing position or go back to short-term disability. The company (which apparently wanted Gurwara's cooperation in a pending, unrelated lawsuit) sweetened the second alternative with an offer that he would retain his rights under the stock purchase agreement. The exercise of this third stock option—now one for 14,062 shares at $8.50 per share due to stock splits—was apparently critical to Gurwara, with the third yearly period to begin on May 6, 1988. Based in part on the company's representation that his rights would be preserved, Gurwara chose to accept short-term disability, effective April 1, 1988.

LyphoMed's promise apparently turned out a sham. Soon after May 6, Gurwara attempted to exercise his third option, only to be told he was considered a terminated and permanently disabled employee as of April 1. Because this change in status occurred prior to the date his third option vested, that option was lost. Gurwara filed suit to recover the difference between the stock's real value (alleged to be $31.87) and the option price for 14,062 shares. His basis for federal jurisdiction was to be section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j) (1988), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1988). The district court granted defendant's motion to dismiss the securities claim, and thereafter dismissed the pendent state claims without prejudice.

Despite the seemingly strong case plaintiff has against LyphoMed on his state law claims, Gurwara's federal securities claim contains a serious defect. The language of section 10(b) states that for a fraudulent act to violate the statute, the fraud must be "in connection with the purchase or sale of a security." 15 U.S.C. § 78j(b) (1988).[1] LyphoMed's alleged misrepresentation apparently went beyond misleading the plaintiff merely about his employment status. Taking plaintiff's allegations as true, we face the situation in which the employer directly misrepresented the plaintiff's rights under the stock option granted him; Gurwara was told, contrary to fact, that the change of status he was considering and eventually pursued would not affect

---

1. We assume without deciding that plaintiff in this case is a purchaser of a security under the meaning of the "purchase or sale" element of a section 10(b) cause of action. *Cf. Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 939–40 (2d Cir.) (pledge of security as collateral for loan is "sale" within meaning of section 10(b)), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

his stock option rights. Yet this misrepresentation went only to Gurwara's opportunity to purchase the stock at the described price. It in no way related to the value of that stock.

We do not read the plaintiff's arguments to disagree with this assessment. In his reply brief, plaintiff concedes that, in order to prevail, he must "quarrel vociferously . . . with any notion that fraud in a securities transaction is limited to the consideration involved, or the value of the securities themselves." Appellant's Reply Br. at 3. Nor do the cases Gurwara cites display a different understanding. The Supreme Court found a section 10(b) violation in *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 9, 92 S.Ct. 165, 167, 30 L.Ed.2d 128 (1971), because the consideration offered to the investor for its stock was in effect worthless. Similarly, in *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429, 437–39 (7th Cir.1987), *cert. denied*, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988), we found only that a misrepresentation of the value of a company's stock could, even in the context of an employment decision which resulted in a sale of that stock, rise to the level of a section 10(b) action. We thus find that plaintiff has not argued—with a single exception—that this misrepresentation relates to the value of either the stock or the consideration offered.

The exception is Gurwara's passing remark in his opening brief that the misrepresentation in effect reduced the value of "his stock" to zero. Appellant's Br. at 16. We think this conclusion misperceives the realities of this case. Gurwara did not yet own the shares of stock available under the third option: the promise may have misrepresented the value of the option by suggesting that it would continue to have value, but the company did not misstate the value of LyphoMed's stock.[2]

So we must decide whether the misrepresentation in this case, unrelated to the value of the involved security or the consideration offered for it, still occurs "in connection with" the purchase of that security.[3] When interpreting the scope of section 10 and Rule 10b–5, we are aware that this remedial statute is to be interpreted liberally so as to effectuate congressional purpose. *Superintendent of Insurance*, 404 U.S. at 12, 92 S.Ct. at 169. Nonetheless the Supreme Court has instructed us that the fundamental purpose of the Securities Exchange Act of 1934 is to implement a philosophy of full disclosure. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477–78, 97 S.Ct. 1292, 1302–03, 51 L.Ed.2d 480 (1977); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976).

Judge Friendly of the Second Circuit expanded on this idea:

> The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

*Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). In that case, the Second Circuit faced an analogous problem. The fraud on which the section 10(b) action was founded amounted to misrepresentations of the financial situation of the defendant firm, but in the context of statements to secure a loan from the plaintiff banks. The only securities associated with the transaction were the shares of a third company which the defendant pledged (or "sold," as the court found) as collateral for

---

**2.** Whether Gurwara might have sued successfully under section 10(b) for misrepresentations in connection with his *option contract* is an issue we need not resolve. Throughout the lawsuit, Gurwara has clearly relied on the LyphoMed stock itself as the "security" on which his 10(b) action was based.

**3.** The Supreme Court has recognized but avoided this question, at least with regard to an action under section 17(a) of the 1933 Act. *Rubin v. United States*, 449 U.S. 424, 429 n. 6, 101 S.Ct. 698, 701 n. 6, 66 L.Ed.2d 633 (1981).

the loans. The court refused to find this relationship sufficient to meet the "in connection with" requirement. "[I]t is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the [sale] of a security is a part." *Id.* The Second Circuit thus found that, because the misrepresentations did not concern the third company or the value of that company's shares of stock, the transaction fell outside the scope of section 10(b).

The Fourth Circuit, in *Hunt v. Robinson,* 852 F.2d 786 (4th Cir.1988), encountered a case nearly on all fours with plaintiff's action before us. Hunt accepted employment with Robinson's company on the promise that he would receive shares of stock in a new company Robinson was forming. Although the new company was formed and stock issued, Hunt never received his promised shares. His action under section 10(b) was nevertheless dismissed by the district court, and the court of appeals affirmed. "Hunt has pointed to no misrepresentations concerning the financial resources or assets of the then unformed company." *Id.* at 787. The court agreed that no misrepresentation had occurred "in connection with" the sale of securities.

We see no reason to differ with these courts or their analysis on the facts before us. Plaintiff's complaint in this case appears to state a good cause of action under state law, but there is no reason to believe that this was the type of misrepresentation Congress meant to proscribe through the federal securities laws. We do not hold today that no misrepresentation in the context of an employment decision may serve as a foundation for a section 10(b) action. Had LyphoMed made the same promises to Gurwara—including a promise to sell shares it valued at over thirty dollars for eight dollars and change—but overstated the "real" value of the shares (which were actually worth only twelve dollars), Gurwara would have just cause to believe a misrepresentation "in connection with" the putative sale of securities had occurred. The mere fact that his consideration took the form of accepting employment instead of pecuniary remuneration matters not at all. But on the facts pleaded by Gurwara before the district court, the misrepresentations did not go to the value of the stock at issue or the value of the consideration in return for it. We therefore AFFIRM the district court's decision to dismiss this action.