**Bret and Luann BEEBE, Appellants,**

v.

**COMPAQ COMPUTER CORPORATION and Ken Peavy, Individually, Appellees.**

No. 14–95–00915–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 6, 1997.

Richard S. London, Jane E. Perelman, Houston, for appellants.

W. Carl Jordan, Sara A. Welch, Houston, for appellees.

Before YATES, HUDSON and FOWLER, JJ.

**OPINION**

HUDSON, Justice.

Appellants, Bret and Luann Beebe, sued appellees for breach of contract, negligence and gross negligence, breach of fiduciary duty, intentional infliction of emotional distress, fraud, and violations of the Texas Secu-

rities Act. The trial court granted appellees' motion for summary judgment. In seven points of error, appellants contend the trial court erred in awarding summary judgment because: (1) there are issues of material fact regarding the modification of the terms of their employment contract; (2) appellees failed to meet the burden of proof with regard to appellants' claims of fraud; and (3) there was an issue of material fact relating to appellants' claim under the Texas Securities Act. We affirm the judgment of the trial court.

Bret Beebe began working for Compaq in December, 1982. Compaq also hired his wife, Luann, in February, 1983. Both appellants were employees-at-will. In 1985, Compaq introduced a program styled the "1985 Nonqualifed Stock Option Plan." The purpose of this plan was to

> ... provide compensation in the form of ownership of the common stock, $.01 par value ('Common Stock'), of COMPAQ COMPUTER CORPORATION, a Delaware corporation ('Company') to certain selected employees of the company and its subsidiaries.

On November 10, 1987, appellants signed a "Nonqualified Stock Option Agreement" entitling them to stock options under the 1985 plan. They signed similar agreements under this plan in 1988. According to the agreements, the options were offered as "an inducement to remain in the service of the Company and as an incentive for increased efforts during such service."

In early 1991, both appellants requested a leave of absence to attend to a troubled family business in Alabama. Wayne Collins, a vice president at Compaq, told Mr. Beebe that he would be fairly treated like every other Compaq employee who had requested a leave of absence. Beebe admits that Collins made no express commitment regarding the stock options, but claims this conversation led him to believe that his stock options would continue to vest during his leave of absence. Later, Beebe discussed the specific terms of his leave with the Director of Employee Relations. When Beebe was presented with a written leave agreement which stated that the vesting of the stock options would be suspended during his absence, Beebe objected to this condition and refused to sign the document.

Beebe then appealed to Collins, who offered to investigate the matter to see if he could help. Collins was unable to resolve the matter, and Beebe turned to Collins' supervisor, Murray Francois, for assistance. Beebe claims that Francois made no express commitment, but assured him that he would look into Compaq's policy about the vesting of stock options and see that Beebe was treated fairly. Compaq apparently concluded that it would not change its policy. Just before appellants' leave began, Compaq again presented appellants with documents providing for the suspension of stock option vesting during the period of their absence. Appellants again refused to sign. Without reaching an agreement on this issue, appellants began their leave of absence.

During appellants' leave, Compaq continued to send copies of these suspension documents for appellants' signatures. In November 1992, the suspension document was accompanied by an ultimatum. If appellants failed to sign and return the agreement, their leave would be terminated and they would have one year to exercise all outstanding stock options. Appellants again refused to sign. Compaq terminated the Beebes' leave of absence, and they never returned to work. When appellants attempted to exercise their outstanding stock options, they were prohibited from exercising those options which vested during the term of their leave.

■ In their first, second, and third points of error, appellants contend the trial court erred in granting appellees' motion for summary judgment because the stock options (1) were not a term of their employment-at-will contract, and (2) there is an issue of material fact with regard to an attempted modification of the contract. We disagree.

To prevail on a motion for summary judgment, the movant must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). When, as here,

the summary judgment order does not specify the ground or grounds on which it is based, we will uphold the order on any ground asserted by the movant that is meritorious. *Rogers v. Ricane Enters. Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

The agreements signed by the appellants indicate that their stock options are an inducement to *remain* in the service of Compaq and an incentive for increased efforts during this service. The purpose of Compaq's stock option plan was to "provide compensation in the form of ownership of the common stock ... to certain selected *employees.*" (emphasis added). Other courts have interpreted similar plans as unambiguous and as clearly excluding individuals who are merely casual or nominal employees. *See Humphreys v. Amerada Hess Corp.,* 487 F.2d 800, 802–03 (10th Cir.1973); *Sparks v. Microwave Assocs., Inc.,* 359 Mass. 597, 270 N.E.2d 909, 911 (1971).

In *Humphreys,* the court found that a manager who had ceased active service with his employer but retained a nominal position in the company, was not an "employee" within the meaning of the employer's stock option plan. *Humphreys,* 487 F.2d at 802–03. Likewise, the *Sparks* court determined that an engineer who ceased being a regular employee, but continued to serve his company as a "casual consultant," also failed to qualify as an "employee" under his company's option plan. *Sparks,* 270 N.E.2d at 911. Because the purpose of the option plan was to further the growth and development of the company by granting stock options to selected "officers, department heads, and other key employees, as an incentive," the court held that the plan contemplated a *substantial* relationship with the employer. *Id.*

We believe *Humphreys* and *Sparks* are analogous to this case. Appellants remained *nominal* employees of Compaq, but had ceased to perform active service or receive compensation from the company. They were not "employees" within the meaning of the 1985 Nonqualified Stock Option Plan. Appellants' first, second, and third points of error are overruled.

▬ Appellants' fourth, fifth, and sixth points of error argue the trial court erred in

granting appellees' motion for summary judgment on appellants' fraud claim. Appellants claim appellees failed to carry their burden of proof and that there are remaining issues of material fact with regard to the alleged fraud.

Appellants' fraud claim rests upon the contention that Compaq intentionally misrepresented its policy regarding the vesting of stock options. This allegation, standing alone, is not sufficient to sustain a cause of action for fraud. Without a showing of detrimental reliance, the Beebes cannot prevail. *See Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977). Here, it is undisputed that Compaq gave appellants written notice, *prior to their departure,* that their stock options would not vest during their unpaid leave. Although the Beebes contend the written agreement proposed by Compaq conflicted with oral assurances made earlier by Collins and Francois, Mr. Beebe admitted in his deposition testimony that he was not deceived by the misrepresentations and did not rely on them. Thus, appellants have failed to demonstrate a right to recover for fraud. Appellants' fourth, fifth, and sixth points of error are overruled.

▬ Appellants' final point of error complains that the trial court erred in granting summary judgment regarding their claims under Section 33 of the Texas Securities Act. This provision states that a person "who offers or sells a security ... by means of an untrue statement of a material fact or an omission to state a material fact ... is liable to the person buying the security from him...." TEX.REV.CIV. STAT. ANN. art. 581–33 A.(2) (Vernon Supp.1996). An omitted fact is material if there was an appreciable likelihood that it could have significantly affected the investment decisions of a reasonable investor by substantially altering the information available to him in deciding whether to invest. *Bridwell v. State,* 804 S.W.2d 900, 904 (Tex.Crim.App.1991).

We have found no Texas cases dealing with liability under the Texas Securities Act regarding employee stock options. Federal courts, however, have found that federal securities laws, which prohibit misrepresenta-

tions or omissions of material fact in connection with the purchase or sale of a security, do not impose liability in this situation. *See* 15 U.S.C. § 78j(b) (1988). While cases dealing with the federal securities laws are not dispositive concerning our interpretation of the Texas Securities Act, they may provide persuasive guidance. *See Wilson v. Lee*, 601 S.W.2d 483, 485 (Tex.Civ.App.—Dallas 1980, no writ).

In *Gurwara*, a seriously ill plaintiff went on short term disability leave at his employer's suggestion. *Gurwara v. Lyphomed, Inc.*, 739 F.Supp. 1162, 1166–67 (N.D.Ill. 1990), *aff'd*, 937 F.2d 380 (7th Cir.1991). His stock options failed to vest while he was on disability status, and he sued his employer. Claiming that his stock options failed because of his employer's alleged misrepresentations, plaintiff argued that his employer violated the federal prohibitions concerning the purchase or sale of securities. The Seventh Circuit disagreed, holding that securities law should not be expanded to embrace an employment dispute that centered on stock options. *Id.* at 1166.

As in the case now before us, the plaintiff in *Gurwara* complained of his employer's misrepresentations concerning the circumstances under which his stock options would vest. The court found that these alleged deceptions were not material to an investment decision. Since the plaintiff's stock options never vested, he never made a *decision* to buy or sell stock. The alleged misrepresentations, in effect, preempted any investment decision before it could occur. *Id.* at 1169. In the case here, appellants' options never vested because they ceased to be "employees" under the terms of the option plan. Appellants never made an investment decision to buy or sell stock; they merely held an option which failed to vest.

Here, appellants complain of *two* instances of misrepresentation.[1] The first complaint relates to the alleged deceptions by Compaq made before appellants took their leaves of absence. The second relates to the alleged misrepresentations in the option plan itself.

Specifically, appellants complain that the plan contains no provision explaining vesting procedures when an employee takes a leave of absence. Because there appears to be no authority directly on point, we turn for guidance to cases in which Texas courts have barred fraud claims under the Business and Commerce Code in similar circumstances.

Section 27.01 of the Business and Commerce Code prohibits false representations in a transaction involving stock in a corporation. TEX. BUS & COM.CODE ANN. § 27.01 (Vernon 1987). Our sister court has concluded that a former employee whose stock options failed to vest could not sue his employer for fraud in that transaction. *Stephanz v. Laird*, 846 S.W.2d 895, 905 (Tex.App.—Houston [1st Dist.] 1993, writ denied). There, the plaintiff's employment letter required him to meet certain conditions precedent before his stock options began to vest; he failed to do so. The court found that because these conditions precedent were not satisfied, the plaintiff could not seek relief against his employer under the Business and Commerce Code's anti-fraud provisions. *Id.*

Similarly, we find that individuals on leave of absence from Compaq are excluded from vesting under the company's employee option plan. Here, the stock options did not vest because appellants were not "employees" within the terms of the plan. We find they are not entitled to relief under the Texas Securities Act's anti-fraud provisions. We overrule appellants' seventh point of error and affirm the judgment of the trial court.

---

**1.** Since the plaintiff in *Gurwara* relied on the actual shares of stock as the security upon which his claim was based, the court did not reach the issue of misrepresentations in connection with the option contract itself. *See Gurwara*, 937 F.2d at 382 n. 2.