**UNITED INTERNATIONAL HOLDINGS, INC., et al., Plaintiffs,**

v.

**The WHARF (HOLDINGS) LIMITED, et al., Defendants.**

**Civil Action No. 94–K–2560.**

United States District Court,
D. Colorado.

Nov. 25, 1996.

**864**

Jeffery A. Chase, Jacobs Chase Frick Kleinkopf & Kelley LLC, Denver, CO, David B. Wilson, Daniel P. Maguire, Holme, Roberts & Owen LLP, Denver, CO, for Plaintiffs.

William R. Jentees, James C. Munson, Martin T. Tully, Kirkland & Ellis, Chicago, IL, Scott R. Bauers, Petrie, Bauer & Vriesman, LLP, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

This action arose when Defendants refused to allow Plaintiffs to invest in a Hong Kong cable television franchise they had been awarded with Plaintiffs' help. Plaintiffs seek damages for breach of contract, promissory estoppel, unjust enrichment, and fraud under federal and state securities law and common law. The matter is set for a one month jury trial commencing Tuesday, February 18, 1997. Before me now are four motions for summary judgment. The motions are denied.

### I. BACKGROUND.

Plaintiffs United International Holdings, Inc. (UIHI) and UIH Asia, a Colorado partnership of which UIHI is the managing general partner (collectively, "UIH"), are Colorado entities in the business of investing in cable television systems internationally. De-

fendants are The Wharf (Holdings) Limited ("Holdings"), Wharf Communications Investments Limited (WCIL), Holdings' wholly-owned subsidiary, and Stephen Ng, Holdings' vice-chairman and former managing director of Holdings, as well as the president and a director of WCIL (collectively, "Wharf"). Also a Defendant, but to Plaintiffs' claim for unjust enrichment only,[1] is Wharf Cable Limited ("Cable"), a wholly-owned subsidiary of WCIL's wholly-owned subsidiary, CNCL.

Denver-based UIH claims it was lured to Hong Kong in the early 1990s to lend its expertise and help Wharf develop, obtain a license for and implement a cable television franchise in Hong Kong (the "Franchise"), potentially one of the largest in the world. In exchange, UIH claims it was promised an option to purchase a 10% equity interest in Cable, the Wharf subsidiary that would control the Franchise.

According to UIH, the parties entered into a binding oral option agreement regarding the Cable investment on October 8, 1992. At the time, UIH had already committed significant resources to the Franchise bid, and had been asked by Wharf to commit substantially more. Before agreeing to proceed any further, UIH Chief Executive Officer William Elsner called a meeting with Ng. Ng travelled to Denver, meeting with Elsner and UIHI President Mark Schneider on October 8.

At the meeting, Elsner states he presented Ng with an ultimatum: without Wharf's "firm agreement" regarding UIH's right to invest, UIH was *not* willing to continue to provide its services." Elsner Aff. (Pls.' Submission of Evid. Cited in Combined Mem. in Opposition to Defs.' Four Mots.Summ.J., Tab 22) ¶ 2. According to Elsner and Schneider, Ng agreed. Elsner Aff.; Elsner Dep. (Tab 6, pp. 96–98); Schneider Affs. (Tabs 24, 25). The intent, they assert, was for the agreement to become effective immediately; not that it be conditioned upon any subsequent

---

1. UIH has withdrawn its promissory estoppel, fraud and civil conspiracy claims against Cable.

*See* Pretrial Order at 4, n. 1 (filed Mar. 4, 1996).

writing, board approvals or investment by other entities. Elsner Aff. at ¶ 3.[2]

UIH asserts that after Wharf obtained its Franchise license in June 1993, it began efforts to "get out" of its agreement with UIH. As evidence, UIH offers internal Wharf documents with comments such as "how do we get out?" (Tab 71); "start to backpeddle" (Tab 73); and "[e]ncouraged [UIH] to activate TCA [3] (but they were careful not to take the bait)" (Tab 75). When UIH attempted in 1994 to exercise the option, Wharf refused to allow it to invest. This lawsuit followed.

UIH asserts eleven claims against Wharf.[4] UIH alleges Wharf's refusal to allow it to invest breached the October 8, 1992 oral option agreement. Further, UIH claims it spent thousands of man-hours and approximately $1 million to provide expertise and services to Wharf in reliance on Wharf's promises, and maintains Wharf is prohibited, under the equitable theories of promissory estoppel and unjust enrichment, from denying the option's existence and from retaining the benefit of UIH's expertise and services.

UIH also asserts statutory and common fraud claims against Wharf, asserting Wharf induced UIH to lend its expertise and services to the bidding process based on deliberate and negligent misrepresentations regarding its ultimate right to invest. Because UIH is in the business of investing, not consulting, UIH states it would never have provided such services were it not for Wharf's promises. According to UIH, Wharf made the promises knowing it had no intention of following through on them.

Wharf initially attempted to compel international arbitration of the dispute pursuant to a clause in the TCA. Judge Nottingham, to whom this case was originally assigned, summarily denied Wharf's motion, and the

Tenth Circuit affirmed. *See* Order and Judgment, No. 95–1184 (Feb. 9, 1996). In additional summary orders and bench rulings, Judge Nottingham denied motions filed by Wharf to dismiss various UIH claims and to transfer venue to Hong Kong. The case was transferred to me on October 9, 1996.

## II. *THE MOTIONS FOR SUMMARY JUDGMENT.*

### A. *Summary Judgment Standard.*

Rule 56(c) of the Federal Rules of Civil Procedure permits entry of summary judgment where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The facts presented, and appropriate inferences that may be drawn from them, must be construed in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper only if a reasonable trier of fact could not return a verdict for the nonmoving party. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### B. *Defendants' First Motion for Summary Judgment on Foreign Law and Forum Issues (All Counts).*

In its first motion for summary judgment, Wharf revisits issues raised in its motion to dismiss for *forum non conveniens,* arguing that Hong Kong should supply both the law and the forum for the dispute between the parties. I reject both contentions.

---

2. As support, UIH presents the testimony of its Chief Operating Officer Dave D'Ottavio (Tab 4, pp. 31–37) who stated that immediately after the October 8 meeting, he was ordered to proceed with Ng's request for a 100% increase in resources committed to the Hong Kong project. Four UIH employees went to work in Hong Kong full-time, and UIH shut down all of its other operations in Asia. *Id.*

3. The TCA, or Technological Cooperation Agreement, was executed by UIH and Wharf in September 1992 for submission with the September 30 Franchise bid. The TCA identified Wharf as the sole owner of Franchise and UIH as the entity providing technical support and expertise to Wharf.

4. UIH withdrew its twelfth claim for relief for civil conspiracy before the March 4, 1996 pretrial conference. *See* Pretrial Order at 4, n. 1.

## 1. *Choice of Law.*

Wharf looks to the TCA and the series of draft agreements between itself and UIH to argue the parties' "manifest" intent was that Hong Kong supply the governing law in any dispute between them. Alternatively, Wharf invokes the "most significant relationship" test of the *Restatement (Second) of Conflict of Laws* §§ 6, 145, to argue that Hong Kong, rather than Colorado, law should govern.

Wharf avers generally that Hong Kong bears the "most significant relationship" to the dispute and to the parties in this case,[5] and, more significantly, describes only in the vaguest terms how Hong Kong and American state or federal law differ with regard to the specific claims and issues raised. *See* Defs.' Reply at 5 (stating UIH's promissory estoppel and statutory securities fraud claims are not cognizable under Hong Kong law and asserting, without citation or explication, that there are "significant differences" in the law with respect to the statute of frauds, punitive damages, and fee shifting).

As an initial matter, Wharf has demonstrated no outcome-determinative conflict between U.S. and Hong Kong law. Unless such a conflict exists, courts do not make choice of law decisions. *See Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C.Cir. 1985).[6]

Further, the choice of law in a given case is not made once for all issues; each issue is to receive separate consideration if it is one that would be resolved differently under the local law rule of two or more of the potentially interested states. *Restatement* § 145, comm. (d). Wharf's reliance on *Johnson v. Continental Airlines Corp.*, 964 F.2d 1059, 1063–64 (10th Cir.1992) to urge rejec-

tion of this " 'smorgasbord' " approach is unpersuasive. In *Johnson,* the Tenth Circuit refused to allow plaintiff to invoke Idaho law for compensatory damage issues and Colorado law for issues related to prejudgment interest. *Id.* at 1064. No such effort to "pick and choose" the law to apply to specific claims is manifest in this case.

On this record, the choice of law declaration Wharf seeks would be nothing more than an advisory opinion. As Wharf concedes at page 5 of its Reply, the principal purpose in seeking such a declaration is to buttress Wharf's motion to transfer venue to Hong Kong for *forum non conveniens.* Because I deny the motion to transfer (*see* Section II(A)(2), *infra*), I see no need, on this record, to rule on the conflict of laws issue.

## 2. *Choice of Forum.*

In its First Motion for Summary Judgment, Wharf renews its request for a transfer of this case to Hong Kong. As grounds, Wharf asserts Colorado is an inappropriate forum because "Hong Kong is where the bulk of the parties and proof are, where many key nonparty witnesses can be compelled to appear, and where any judgment could be easily enforced." (Defs.' Br. Supp.First Mot. for Summ.J. at 18.) Wharf fails to identify any of the witnesses for whom trial in Colorado would be "inconvenient," and makes no attempt to show why these witnesses would be unwilling to come to Colorado, why the use of deposition testimony would be unsatisfactory, or why the use of compulsory process would be necessary. *See Scheidt v. Klein,* 956 F.2d 963, 965–66 (10th Cir.1992) (absent such a showing, defendant failed to demonstrate the requisite inconvenience to its witnesses), *applied*

---

5. Wharf's allegations, in this regard, are largely conclusory. For example, one of the factors Wharf claims "leads inescapably" to the conclusion that Hong Kong law should govern, is the bald assertion that "the relative interests of the Hong Kong Government in the subject matter of this litigation far outweighs [sic] any interest of the State of Colorado." Defs.' Br. Supp. First Mot.Summ.J. at 16.

6. The fact causes of action under the Securities Exchange Act of 1934 and Rule 10b–5 do not exist under Hong Kong law does not present a

conflicts issue. Instead, the question is whether the securities laws reach Defendants' conduct. *See Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 992–93 (2d Cir.1975) (federal securities laws "[a]pply to losses from sales of securities to American resident in the United States whether or not acts (or culpable failures to act) of material importance occurred in this country"). As set forth in Section II(D), *infra,* the facts presented are not only sufficient to invoke U.S. securities laws, but also to survive summary judgment.

*in Knapp et al. v. Romer et al.,* 909 F.Supp. 810, 813 (D.Colo.1995).

Further, Judge Nottingham denied Wharf's identical motion in April 1995. Since then, discovery has proceeded to its conclusion and trial, in the District of Colorado, is set to commence in three months. Wharf offers no new factual or legal argument in the present motion that would justify altering the law of the case as to venue, and I decline to do so.

Based on the foregoing, Wharf's Motion for Summary Judgment on Foreign Law and Forum Issues is denied.

C. *Defendants' Second Motion for Summary Judgment on Plaintiffs' Contract–Based Claims (Counts I, II and III).*

■ UIH's first three causes of action are for breach of contract, promissory estoppel and unjust enrichment. Wharf moves for summary judgment on all three claims.

Wharf asserts it is entitled to judgment on UIH's contract-based claims because UIH has offered no competent evidence to support the existence of the purported oral option contract and maintains the evidence presented supports instead the opposite conclusion. In addition, Wharf argues UIH is estopped to allege such a contract because, when UIH was required to disclose "material contracts" and business relationships to its investors and the SEC during the relevant time period, it made no mention of an "oral option contract" with Wharf. Finally, Wharf maintains the only written contract between the parties (the September 1992 TCA) expressly precluded the existence of any oral contracts.

These issues are entirely inappropriate for summary disposition. The record is rife with evidence from both sides disputing whether Ng's October 1992 representations gave rise to a binding oral option agreement. Both sides offer evidence regarding the subsequent conduct of the parties to support their positions. UIH points to the fact it performed under the agreement by immediately contributing its expertise and resources to the project and maintains it would never have done so had the agreement not been binding. Wharf points to the nature of the transaction and UIH's conduct in similar transactions to argue UIH would never consummate a deal of this magnitude without reducing it to writing.

Specifically, Wharf relies on the TCA and a series of draft memoranda of understanding (MOUs) exchanged by the parties in 1993 as evidence that any option Ng offered in October 1992 was nonbinding and conditional. UIH counters with copies of Wharf board of directors' meetings to internal memoranda acknowledging Wharf's "understanding" that the relationship with UIH was that of partner and investor and supporting at least an inference that Wharf knew, and intended UIH to believe, Ng's October statements were binding. With respect to the TCA, UIH offers the testimony of Wharf Financial Officer Emil Fung, who conceded in his deposition that the TCA was created for "packaging purpose[s]" only and admitted that Wharf had no intention, "at that time," that it form the basis of the Wharf–UIH relationship. Fung Dep. (Pl.'s Evid. in Support of Combined Mem. in Opp. to Defs.' Mots.Summ.J., Tab 8) at 450–51.

■ Wharf's assertions to the contrary notwithstanding, the lack of a contemporaneous written agreement evidencing the alleged option is not dispositive of UIH's contract claims. *See Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 261 (2d Cir.) (mere fact parties contemplate memorializing their agreement in a formal document does not prevent informal agreement from taking effect before that event, but finding parties intended not to be bound before execution of formal, written contract), *cert. denied,* 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984), *applied in City and County of Denver v. Adolph Coors Co.,* 813 F.Supp. 1476, 1481 (D.Colo.1993). *See also Griego v. Kokkeler,* 543 P.2d 729, 730 (Colo.App.1975) (where there is a complete agreement, the fact certain formalities remain to be performed does not reduce the agreement to the status of mere negotiations), *applied in Adolph Coors* at 1481. The evidence presented, viewed in the light most favorable to UIH, supports an inference that an oral option agreement ex-

isted.[7]

The factual disputes regarding the parties' course of conduct and intent are material, and preclude entry of summary judgment in Wharf's favor on UIH's contract-based claims. *See Deepwater Inv., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1111–12 (10th Cir.1991) (in complicated and lengthy business transaction, question of whether contract existed and the terms of the alleged contract inappropriate for resolution on motion for summary judgment). Finally, I reject Wharf's judicial estoppel argument, discussed in Section II(E), *infra*, as unpersuasive.

D. *Defendants' Third Motion for Summary Judgment on Plaintiffs' Securities Law Claims (Counts IV, V, VI, VII and VIII).*

Wharf contends UIH's federal and statutory securities fraud claims fail as a matter of law because UIH has failed to marshall sufficient evidence to satisfy critical elements of those claims.

### 1. *Counts IV, VI and VII— Securities Fraud.*

Rule 10b–5 [8] prohibits any person from defrauding another "in connection with the purchase or sale of any security." Wharf argues UIH lacks standing to pursue claims under Rule 10b–5 and its state analogs because it has failed to establish either that there was a "purchase or sale" of a security [9] or that the alleged fraud occurred "in connection with" such a purchase or sale.

To satisfy the "in connection with" element of causation under Rule 10b–5, Wharf asserts the fraud must relate to the "nature, characteristics or value" of the security, not just its existence. Wharf argues Ng's alleged fraud bore no such relationship to the option or to potential sale of Cable shares the option represented.

Wharf relies on *Gurwara v. LyphoMed, Inc.*, 937 F.2d 380 (7th Cir.1991) and *Estate of Soler v. Rodriguez*, 847 F.Supp. 236 (D.P.R.1994) to argue the securities laws provide no forum for disappointed investors like UIH. The reliance on *Soler* is misplaced. *Soler* was a shareholder derivative action involving fraud on the corporation by its directors. Further, the First Circuit Court of Appeals reversed the District Court in *Estate of Soler v. Rodriguez*, 63 F.3d 45 (1st Cir.1995), holding allegations of the deliberate concealment by interested directors of information that a block of the company's stock was being sold at an improperly low price to purchasers linked to the interested directors stated a cause of action under Rule 10b–5. This was notwithstanding the fact that the fraud related to the occurrence of the sale itself, not the "nature, value or characteristics" of the specific stock sold. *Id.* at 54–55.

*Gurwara* involved an employment dispute in which the plaintiff claimed his employer made misrepresentations about the employee's status that affected his right to exercise a stock option. The Seventh Circuit affirmed

7. I note that where there is a complete oral agreement but one party argues it did not intend to be bound until the execution of a formal writing, it is the disclaiming party that bears the burden of proving either that its intent not to be bound was shared by the other party, or, that the other party knew of the disclaiming party's intent. *Coors* at 1481. As to whether the enforcing party should have known of the disclaiming party's intent, there are four factors to consider: (1) whether the parties have stated an intention not to be bound absent an executed writing; (2) whether one party has performed partially and the other party has accepted such performance; (3) whether there are no issues left to be negotiated such that the signing of the contract is merely ministerial; and (4) whether the agreement concerns complex business matters such that a written agreement would be the norm, not the exception. *Id.* (citing *PDL Vitari Corp. v. Olympus Indus., Inc.*, 718 F.Supp. 197 at 206–07

(S.D.N.Y.1989)). Here, evidence presented by UIH that it performed its obligations under the purported option agreement creates a triable question on this issue as well.

8. Rule 10b–5 is codified at 17 C.F.R. § 240.10b–5 (1996).

9. Because this second argument is premised on the rejected assertion that "no binding 'option agreement' ever existed" (*see* Defs.' Br. Supp. Third Mot.Summ.J. at 2), my analysis is limited to the issues raised in Wharf's first argument. *C.f. Reprosystem*, 727 F.2d 257, 265 (2d Cir.1984) (prospective purchasers of foreign subsidiaries were outside class of persons protected by Rule 10b–5 after it was determined no enforceable contract to purchase the subsidiaries' shares existed).

the dismissal of plaintiff's § 10(b) claim, finding that while the alleged misrepresentation may have affected the value of the stock option, it did not "go to the value of stock at issue or the value of the consideration in return for it." 937 F.2d at 383.

Courts in this circuit have not ascribed such a narrow interpretation of the "in connection with" element of a § 10(b) claim. In *Richardson v. MacArthur*, 451 F.2d 35, 40 (10th Cir.1971), the Tenth Circuit expressly declined to limit liability under § 10(b) or Rule 10b–5 to "the garden variety of securities fraud involving deceit as to the actual value of securities bought or sold." *Accord Technology Exch. Corp. of Am., Inc. v. Grant County State Bank*, 646 F.Supp. 179, 182 (D.Colo.1986). Instead, the Tenth Circuit recognized a cause of action under § 10(b) where the defendant refused to sign promised stock over to plaintiff on grounds defendant had paid off plaintiff's loan. *Ibid.*

Rejecting defendant's contention that the case involved "nothing more" than a contract dispute, the Tenth Circuit stated:

> Rule 10b–5 is a remedial measure of far greater breadth than merely prohibiting misrepresentations and nondisclosures concerning stock prices. [Footnote omitted.] No attempt is made in 10b–5 to specify what forms of deception are prohibited; rather, all fraudulent schemes in connection with the purchase and sale of securities are prohibited. [Footnote omitted.]

451 F.2d at 40. Specifically, the court recognized that Rule 10b–5 is a proper civil remedy for a scheme whereby individuals were "induced into contracting for the purchase of stock which the seller had no intention of giving up." *Id.*, n. 6 (citing *Commerce Reporting Co. v. Puretec, Inc.*, 290 F.Supp. 715 (S.D.N.Y.1968) and *Allico Nat'l Corp. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am.*, 397 F.2d 727 (7th Cir. 1968)).

At its core, the instant dispute is one over the purchase and sale of securities. UIH claims it gave consideration for the right to purchase 10% of the shares of Cable stock;

Wharf claims it did not and refused to sell. I have already found the evidence sufficient in this regard to withstand a motion for summary judgment and will assume, for the purposes of the instant motion, that UIH owned a valid option to purchase the Cable shares. Where there is also sufficient evidence to withstand summary judgment that Wharf offered the option with no intent of following through on it and for the purpose of inducing UIH's reliance and performance,[10] Wharf will not be heard to deny liability under Rule 10b–5 because the fraud related to the nonoccurrence of the promised sale, and not to the "value" of the shares themselves.

Accordingly, Wharf's motion for summary judgment on UIH's Rule 10b–5 claims is denied.

### 2. *Counts V and VIII—"Control Person" Liability.*

The sole basis for Wharf's motion for summary judgment on UIH's § 20(a) "control person" claim and its Colorado analog is that UIH's Rule 10b–5 claim is "legally defective." *See First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891, 897 (10th Cir.1992) (a primary violation of the securities laws is a necessary element of a § 20(a) "control person" claim), *rev'd on other grounds sub nom. Central Bank of Denver, v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Because I have determined UIH's Rule 10b–5 claim survives summary judgment, I conclude its derivative "control person" claims survive as well.

### E. *Defendants' Fourth Motion for Summary Judgment on Plaintiffs' Common Law Tort Claims (Counts IX, X, XI, and XII).*

In this motion for summary judgment, Wharf seeks the dismissal of UIH's common law tort claims for fraud (Count IX), negligent misrepresentation (Count X) and breach of fiduciary duty (Count XI).

Wharf contends it is entitled to judgment on UIH's fraud claim because (1) UIH has only shown the nonperformance of an alleged promise to provide a future equity interest in

---

**10.** *See* Section II(E)(1), *infra.*

Wharf, rather than the misrepresentation of an existing or past fact; and (2) UIH is estopped from alleging reliance on such a promise because it failed to disclose the existence of any "option" or other agreement with Wharf to the SEC. Wharf asserts the negligent misrepresentation claim fails because UIH has come forward with no evidence that any purported misrepresentation was made for use in a transaction with a third party, as Colorado law requires. Finally, Wharf maintains UIH's breach of fiduciary duty claim is fatally flawed because there is no evidence that UIH placed "special trust and confidence" in Wharf.

### 1. Fraud.

■ I reject Wharf's argument with respect to UIH's fraud claim out of hand. The nonperformance of a promise to do something at a future time may be fraudulent if it is accompanied by a present intent not to perform. *H & H Distrib., Inc. v. BBC Int'l, Inc.*, 812 P.2d 659, 662 (Colo.App.1990). Wharf concedes this point of law, but contends UIH's fraud claim nevertheless should be dismissed because it is supported "*only* by the affidavit of UIH's President, Mark Schneider," which "is contradicted by Schneider's own contemporaneous documents and the parties' course of dealings." *See* Wharf's Combined Reply Br. at 31 (emphasis original).

Schneider's affidavit—together with the memoranda, board of directors meeting minutes, and the deposition testimony indicating Wharf never intended that the TCA govern the relationship between the parties and instead knew UIH was providing assistance to the bid effort as a prospective investor, not consultant—supports an inference that Ng made his October 1992 representations with no intention of following through with them. As such, UIH's evidence is sufficient to withstand summary judgment.

■ Wharf's assertion that UIH is estopped to claim reliance on Ng's representations because it failed to disclose the alleged "option" to the SEC is also unpersuasive. Judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation. *United States v. 49.01 Acres of Land*, 802 F.2d 387, 390 (10th Cir.1986). The inconsistent position alleged here did not relate to this or any other litigation.

■ Even if the doctrine of judicial estoppel applied, the compelling circumstances necessary for such estoppel are not present. The record indicates that while UIH did not represent that it owned an "option" to invest in the Franchise, it did disclose that was pursuing an "opportunity" to do so. UIH contends this disclosure was adequate because, at the time the disclosures were due, Wharf had yet to obtain the Franchise license and the "option" had not arisen. UIH asserts all of its disclosures were adequate, and has provided sufficient evidence to support this assertion to withstand summary judgment. *See* Dvorak Testimony & Aff. (Pls.' Submission of Evid., Tabs 5 & 21); Pang Testimony (Tab 15).

### 2. Negligent Misrepresentation.

■ While conceding claims for fraud can be premised on a representation to do something in the future, Wharf maintains a claim for negligent misrepresentation cannot.

I see no reasoned basis for such a distinction in law or in fact. *See Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1267 (10th Cir.1989) (applying Colorado law) (claim for misrepresentation, "either negligent or fraudulent," may be predicated upon the failure to fulfill a promise to do something in the future accompanied by the present intent not to perform). I reject Wharf's contention that UIH's negligent misrepresentation claim should be dismissed because UIH has alleged the negligent misrepresentation of a future, rather than "existing," fact.

■ Alternatively, Wharf asserts it is entitled to summary judgment on UIH's negligent misrepresentation claim because the alleged misrepresentation was not supplied for use in a transaction with a third party. Colorado has adopted the *Restatement (Second) of Torts* § 552 (1977) as governing claims for negligent misrepresentation. *See Keller v. A.O. Smith Harvestore Prod., Inc.*, 819 P.2d 69 (Colo.1991). The Restatement provides a remedy against a defendant who, in the

course of his business, profession or employment, negligently supplies false information "for the guidance of others in their business transactions." This court has interpreted the term "business transactions" to refer to "transactions with someone other than the defendant." *See Snoey v. Advanced Forming Technology, Inc.*, 844 F.Supp. 1394, 1400 (D.Colo.1994) (citing Colorado Pattern Jury Instruction 9:3B(3), C.J.I.Civ. (3d) (1988)); *Colorado Nat'l Bank of Denver v. Adventura Assocs., L.P.*, 757 F.Supp. 1167, 1172 (D.Colo. 1991) (same).

Stating UIH's allegations in this case are simply that Ng supplied misinformation in order "to obtain UIH's CATV expertise" and not for use in a third party transaction, Wharf argues UIH's negligent misrepresentation cause of action should be dismissed for failure to state a claim under Rule 12(b)(6). I find UIH's allegations and the evidence presented sufficient to withstand dismissal under either a Rule 12(b) or Rule 56 standard. The record before me creates at least an inference that UIH relied on Ng's misrepresentations in transactions with financial institutions from which it sought financing, as well as third parties with which it negotiated on Cable's (and Wharf's) behalf. Accordingly, Wharf's request for judgment in its favor on UIH's negligent misrepresentation claim is denied.

### 3. Breach of Fiduciary Duty.

UIH's fiduciary duty claim is based on the relationship among UIH, Holdings and WCIL as they negotiated "to form a joint venture or partnership." (Am.Compl. ¶ 142.) UIH relies on Colorado law as stated in *Lucas v. Abbott*, 198 Colo. 477, 601 P.2d 1376, 1379 (1979) and *Elk River Assoc. v. Huskin*, 691 P.2d 1148, 1151 (Colo.App.1984), which provide that fiduciary duties can arise when parties are negotiating to form a partnership or joint venture. Alternatively, UIH claims it placed "special trust and confidence" in Wharf during the course of their relationship, which trust and confidence gave rise to fiduciary duties. *See* Pls.' Combined Resp. at 62 (citing *Klein v. Morgen*, 760 F.Supp. 1403, 1409 (D.Colo.1991)).

Wharf argues the UIH–Wharf relationship involved strictly commercial dealings between sophisticated entities that, as a matter of law, cannot give rise to fiduciary duties. Defs.' Br. Supp. Fourth Mot. Dismiss at 8–9 (citing *Dodd Ins. Serv., Inc. v. Royal Ins. Co. Am.*, 935 F.2d 1152, 1156–57 (10th Cir.1991) and *Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo.App.1992)). Wharf maintains *Lucas* and *Elk River* do not apply because there, unlike here, the negotiations came to fruition and partnerships giving rise to fiduciary duties ultimately were formed. *See* Defs.' Combined Reply at 34–35 (arguing that the question before the courts in *Lucas* and *Elk River* was whether existing fiduciary duties should be "pushed back" in time to the parties' pre-agreement dealings).

While I reject UIH's argument that it reposed "trust and confidence" in Wharf such that fiduciary duties arose, I agree that under the circumstances of this case, the question of whether the parties' relationship and dealings gave rise to fiduciary duties is one for the jury. *See Elk River*, 691 P.2d at 1152. The record in this case supports an inference that the parties were joint venturers, i.e., that they had a joint interest in the Franchise; an express or implied agreement to share in the losses or profits of the venture; and engaged in conduct showing cooperation in the venture. *See Dime Box Petroleum v. Louisiana Land & Exploration*, 938 F.2d 1144, 1147 (10th Cir.1991) (under Colorado law, parties's conduct under oil and gas operating agreement created joint venture). Under these circumstances, summary judgment is inappropriate.

### III. CONCLUSION.

Based on the foregoing, IT IS ORDERED that

1. Defendants' First Motion for Summary Judgment on Foreign Law and Forum Issued (All Counts) is DENIED;

2. Defendants' Second Motion for Summary Judgment on Plaintiffs' Contract-Based Claims (Counts I, II and III) is DENIED;

3. Defendants' Third Motion for Summary Judgment on Plaintiffs' Securities Law

Claims (Counts IV, V, VI, VII and VIII) is DENIED; and

4. Defendants' Fourth Motion for Summary Judgment on Plaintiffs' Common Law Tort Claims (Counts IX, X, XI, and XII) is DENIED.